THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. JUAN ROSARIO CRUZ, Defendant and Appellant.

No. 8402.   Argued December 17, 1940.—Decided December 23, 1940.

R. Hernández Matos for appellant.   George A. Malcolm, Attorney General, and R. A. Gómez, Prosecuting Attorney, for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

Juan Rosario Cruz was prosecuted for the crime of murder committed on the person of Natividad González, in the town of Villalba, within the Judicial District of Ponce. Upon being convicted of murder in the second degree and sentenced to a term of ten years in the penitentiary, he took an appeal, urging in support thereof the following grounds:

1. That grave error was committed in not acquitting the defendant. as having acted in self-defense.

2. That grave and prejudicial error was committed in finding him guilty of murder in the second degree.

Both these assignments relate to the sufficiency of the evidence and to the weighing of the same by the lower court. We will, therefore, consider them together.

From the evidence adduced by the district attorney in support of his theory, it appears that the defendant was

a laborer who worked for Central Herminia, in Villalba, and that the deceased was one of the foremen in charge of the brigades of workmen; that on Saturday, June 19, 1937, which was pay-day, the deceased and the defendant had an altercation which arose from the claim on the part of the defendant that he should be paid at the rate of sixty cents a day, whereas the deceased maintained on the contrary that the rate agreed was fifty cents; that on that account they addressed offensive words to each other; that the incident was terminated by the intervention of the owner of the central, but the defendant withdrew in anger, provoking the deceased and challenging him to a fight; that between six and seven o'clock in the morning of Monday, June 21, 1937, the defendant waited for González in front of the shop of Martín Torres, a place which González must necessarily pass in going to his work; that when González was going on horseback through that place, the defendant called him, left in the shop a machete which up to that moment he had carried in his hand, approached González, addressed some words to the latter who thereupon dismounted, and then they started to fight; and that at that moment the defendant took out a dagger which he carried concealed in his bosom and inflicted on his adversary nineteen wounds which caused the instantaneous death of the latter. The evidence for the prosecution further established that at the time of the encounter González carried, in a hind-pocket of his trouser, a revolver which he was licensed to carry; that the defendant knew that González accustomed to go about armed; and that González made no use of the revolver to repel the attack of the defendant.

The witness José Semidey, co-owner of Central Herminia, described the incident of the 19th, thus:

"What happened that day between Natividad González and the defendant?

"Well, that day, while I was in my office which adjoins that of the paymaster, I heard an altercation between this young man and

the foreman; and then I came out and when I entered the pay-master's office, this young man was saying that the foreman paid the laborers according to personal preference. Then the latter said that he paid them according to the work done by each, and then an argument started and he stated that if the laborer wished to earn as much as the others, he should come back Monday, and if he did the same work as the others he would pay him that amount; and then this one told him that he would not come back to work on Monday because he did not work for thieves; and then he told him that he was as honest as the laborer or even more than his family. Then I stood up and told him to stop that argument and to go on with the payments. Then this young man went out and continued talking. I did not hear what he said because there was some distance . . . ."

The evidence for the defense tended to show that it was the deceased Natividad González who, after denying to the defendant a part of his wages, remonstrated against him, discharged him from his work, and told him: "On Monday I will get even with you, I will make you pay dearly for this"; that next Monday, in the morning, when Natividad González was passing in front of the shop where the defendant was, González called the defendant; that when the defendant got near the horse on which González was riding, the latter hit him with a whip which he was carrying, alighted from the horse, and attacked him with his fists; that after they fought with their fists for five or six minutes, Natividad González attempted to take out the revolver; that they grappled for another five minutes, Natividad trying to take out the revolver and the defendant preventing him from drawing it out; and, lastly, that when the defendant saw that his life was in imminent danger, he took out the dagger which he carried for use in his agricultural work, and defended himself, thus preventing his adversary from killing him.

The conflict between the version of the government and that of the defense is evident. Similarly as to the one existing between the evidence introduced by the one party and

the other to support their respective contentions. The jury adjusted said conflict by according credit to the evidence of the district attorney and rejecting the theory and the evidence of the defendant.

We have made a careful study of the whole evidence. That for the prosecution, which the jury believed, is amply sufficient to establish all of the essential elements required in order to characterize the criminal act charged as murder in any of its degrees.

We do not deem it necessary to discuss the decisions cited by the appellant, relative to the right of self-defense which the law recognizes in favor of every human being. The jury, whose province under the law, as the only triers of fact, is to adjust any conflict in the evidence and to pass upon the credibility of the witness, doubtless reached the conclusion that the defendant was the one who had premeditately provoked the fight, with the intention to kill his adversary in the course of the struggle. The evidence, considered as a whole, justifies that conclusion. The fact that the defendant, after calling his victim and before approaching the latter's horse, left the machete in the shop, which the defense interprets as convincing evidence of the peaceful intentions of the defendant, was undoubtedly interpreted—and justly so, we think—by the jury as evidence of a deliberate intent on the part of the defendant to make his victim believe that the man whom he was to encounter was unarmed when really he was carrying in his bosom the dagger with which he was to deprive him of his life a few minutes afterwards.

We fail to find in the record anything to justify our intervention in annulling the verdict of the jury or in reversing the judgment appealed from, which must be affirmed.